This action in lieu of prerogative writ, submitted for determination upon pleadings, affidavits, exhibits, transcript and briefs, seeks to reverse the action of the Board of Aldermen of the City of Paterson in refusing to issue a junk yard license to plaintiff.
The premises for which a license is sought are known as 96-98 Florida Avenue, 192-194 Wabash Avenue, and 93 Illinois Avenue, all adjoining lots, and are located in a heavy industrial zone wherein such use is permitted under the zoning ordinance.
At the hearing before the Board, the applicant merely offered proof of compliance with the preliminary formal requirements and took the position that he was entitled to the license as a matter of course, contending that the sole authority of the Board was to thereafter revoke the license in the event he failed to subsequently comply with the regulatory requirements of the ordinance. With this contention I cannot agree, for "the power to grant licenses connotes the power of denial for good cause and the test is whether there has been a reasonable, bona fide
exercise of the discretion granted by the legislative authority, as distinguished from arbitrary action." Librizzi v. Plunkett,126 N.J.L. 17.
The "Ordinance to License and Regulate Junk Yards in the City of Paterson," as amended, does not reserve to the Board of Aldermen a discretionary power to grant or refuse a license; the action of the Board must be based upon a reasonable exercise of the police power and in the public interest. That is the question here presented, as it was in *Page 612 Hammond v. Board of Aldermen of City of Paterson, 123 N.J.L. 553; affirmed, 125 N.J.L. 627.
It appears from the record that a portion of the premises for which a license is sought was actually licensed as a junk yard until February, 1942, and apparently, for some unexplained reason, has been permitted to continue in operation without benefit of license since that time. The premises are owned by one De Matteo, presumably the present operator and the person to whom the Board recently refused a license, and the surrounding circumstances, taken in conjunction with the testimony of the plaintiff himself, seem to furnish a reasonable basis for the Board's belief that the present application is merely an evasive attempt to conceal the identity of the real applicant and party in interest. The testimony of objectors living in the immediate area to the effect that they have been unable to secure mortgages because of the proximity of the junk yard is of little significance, for the owner of residential property in a heavy industrial zone is necessarily put on notice of permitted uses in that zone and must accept the natural consequences.
The deplorable condition of the junk yard as maintained and operated through the years, without legal license, by an individual whom the Board believes to be the real party in interest in the present application; testimony respecting a rat menace; the reported result of personal investigation and inspection by Board members, and the continual and innumerable complaints registered, all serve to justify the action of the Board in its unanimous denial of the application for license. Their responsibility, under the police power, is not restricted to the welfare of those in the immediate vicinity affected, but encompasses public welfare generally.
It appearing that denial of the license by the Board was neither arbitrary nor the result of an abuse of discretion, but rather based upon good cause, judgment, accordingly, will be entered for the defendants. *Page 613